UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br>TIME WARNER CABLE INC,<br>ADVANCE/NEWHOUSE PARTNERSHIP, and<br>BRIGHT HOUSE NETWORKS, LLC<br><br>*Defendants.* | Civil Action No.: 16-cv-00759 |

## [PROPOSED] FINAL JUDGMENT

WHEREAS, Plaintiff, the United States of America, filed its Complaint on April 25, 2016 alleging that Defendants propose to enter into transactions the likely effect of which would be to lessen competition substantially in the market for the timely distribution of professional, full-length video programming to residential customers ("video programming distribution") across the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Plaintiff and Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, Plaintiff requires Defendants to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

1

AND WHEREAS, Defendants have represented to the United States that the actions and conduct restrictions can and will be undertaken and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. DEFINITIONS

As used in this Final Judgment:

A.      "Advance/Newhouse" means defendant Advance/Newhouse Partnership, a New York partnership with headquarters in East Syracuse, New York, its successors and assigns, and its Subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees, in their capacity as directors, officers, managers, agents, and employees of the foregoing.

B.      "Bright House" means defendant Bright House Networks, LLC, a Delaware limited liability company with headquarters in East Syracuse, New York, its successors and assigns, and its Subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees, in their capacity as directors, officers, managers, agents, and employees of the foregoing.

2

C.      "Charter" means defendant Charter Communications, Inc., a Delaware corporation with headquarters in Stamford, Connecticut, its successors and assigns (including, without limitation, CCH I, LLC), and its Subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees, in their capacity as directors, officers, managers, agents, and employees of the foregoing.

D.      "Defendants" means Charter, TWC, Bright House, and Advance/Newhouse, acting individually or collectively.  Notwithstanding the foregoing, Advance/Newhouse is not a "Defendant" for purposes of Section IV.

E.      "Department of Justice" means the United States Department of Justice Antitrust Division.

F.      "MVPD" means a multichannel video programming distributor as that term is defined on the date of entry of this Final Judgment in 47 C.F.R. § 76.1200(b), in its capacity as an MVPD.

G.      "OVD" means any service that (1) distributes Video Programming in the United States by means of the Internet; (2) is not a component of an MVPD subscription; and (3) is not solely available to customers of an Internet access service owned or operated by the Person providing the service or an affiliate of the Person providing the service.  For avoidance of doubt, this definition (1) includes a service offered by a Video Programmer for the distribution of its own Video Programming by means of the Internet to Persons other than subscribers of an MVPD service; (2) includes a service offered by an MVPD that offers Video Programming by means of the Internet outside its MVPD service territory as a service separate and independent of an MVPD subscription; and (3) excludes an MVPD that offers Video Programming by means of the Internet to homes inside its MVPD service territory as a component of an MVPD subscription.

3

H.      "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

I.      "Subsidiary" refers to any Person in which there is partial (25 percent or more) or total ownership or control between the specified Person and any other Person.  Notwithstanding the foregoing, Subsidiary shall not include any Person in which a Defendant does not have majority ownership or de facto control if that Person does not provide MVPD service.

J.      "TWC" means defendant Time Warner Cable Inc, a New York corporation with headquarters in New York, New York, its successors and assigns, and its Subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees, in their capacity as directors, officers, managers, agents, and employees of the foregoing.

K.      "Video Programmer" means any Person that provides Video Programming for distribution through MVPDs, in its capacity as a Video Programmer.

L.      "Video Programming" means programming provided by, or generally considered comparable to programming provided by, a television broadcast station or cable network, regardless of the medium or method used for distribution, and, without expanding the foregoing, includes programming prescheduled by the programming provider (also known as scheduled programming or a linear feed); programming offered to viewers on an on-demand, point-to-point basis (also known as video on demand); pay per view or transactional video on demand; short programming segments related to other full-length programming (also known as clips); programming that includes multiple video sources (also known as feeds, including camera

angles); programming that includes video in different qualities or formats (including high-definition and 3D); and films for which a year or more has elapsed since their theatrical release.

### III. APPLICABILITY

This Final Judgment applies to Defendants and all other Persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

### IV. PROHIBITED CONDUCT AND REPORTING

A.       Defendants shall not enter into or enforce any agreement with a Video Programmer under which Defendants forbid, limit, or create incentives to limit the Video Programmer's provision of its Video Programming to one or more OVDs.

B.       Agreements that "create incentives to limit" a Video Programmer's provision of its Video Programming to one or more OVDs within the meaning of Section IV.A shall include, but are not limited to, the following:

1.       agreements that provide for any pecuniary or non-pecuniary penalty on the Video Programmer for the provision of its Video Programming to an OVD, such as rate reductions, re-tiering or re-positioning penalties, termination rights for Defendants, or loss or waiver of any rights or benefits otherwise available to the Video Programmer; or

2.       agreements that entitle Defendants to receive any benefits such as favorable rates, contract terms, or content rights offered or granted to an OVD by a Video Programmer without requiring Defendants to also accept any obligations, limitations, or conditions:

i.       that are integrally related, logically linked, or directly tied to the offering or grant of such rights or benefits, and

       ii.     with which Defendants can reasonably comply technologically and legally. For avoidance of doubt, Defendants will be deemed able to "reasonably comply technologically" if they are able to implement an obligation, limitation, or condition in a technologically equivalent manner.

    C.    Notwithstanding the foregoing, nothing in this Final Judgment shall prohibit Defendants from:

       1.     entering into and enforcing an agreement under which Defendants discourage or prohibit a Video Programmer from making Video Programming for which Defendants pay available to consumers for free over the Internet within the first 30 days after Defendants first distribute the Video Programming to consumers;

       2.     entering into and enforcing an agreement under which the Video Programmer provides Video Programming exclusively to Defendants, and to no other MVPD or OVD; or

       3.     entering into and enforcing an agreement which requires that Defendants receive as favorable material terms as other MVPDs or OVDs, except to the extent application of other MVPDs' or OVDs' terms would be inconsistent with the purpose of Sections A and B of this Section IV.

    D.    Defendants shall not discriminate against, retaliate against, or punish any Video Programmer (i) for providing Video Programming to any MVPD or OVD, (ii) for invoking any provisions of this Final Judgment, (iii) for invoking the provisions of any rules or orders concerning Video Programming adopted by the Federal Communications Commission, or (iv) for furnishing information to the United States concerning Defendants' compliance or

noncompliance with this Final Judgment.  Pursuing a more advantageous deal with a Video

Programmer does not constitute discrimination, retaliation, or punishment.

      E.     Defendants shall submit to the Department of Justice all reports and data relating

to interconnection with the Defendants' broadband Internet access network that are required to

be submitted to the Federal Communications Commission ("the Commission") pursuant to any

rule or order of the Commission, at the same time such reports or data are required to be

submitted to the Commission.

## V. COMPLIANCE INSPECTION

      A.     For purposes of determining or securing compliance with this Final Judgment, or

of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time duly authorized representatives of the Department

of Justice, including consultants and other persons retained by the Department of Justice, shall,

upon written request of an authorized representative of the Assistant Attorney General in charge

of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

      1.     access during the Defendants' office hours to inspect and copy, or at the

option of the United States, to require Defendants to provide to the United States hard copy or

electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession,

custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

      2.     to interview, either informally or on the record, the Defendants' officers,

employees, or agents, who may have their individual counsel present, regarding such matters.

The interviews shall be subject to the reasonable convenience of the interviewee and without

restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States or the Federal Communications Commission, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by a Defendant to the United States, the Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give the Defendant ten calendar days notice prior to divulging such material in any civil or administrative proceeding (other than a grand jury proceeding).

## VI. **RETENTION OF JURISDICTION**

This Court retains jurisdiction to enable any party to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VII.  NO LIMITATION ON GOVERNMENT RIGHTS

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any past, present, or future conduct, policy, or practice of the Defendants.

## VIII.  EXPIRATION OF FINAL JUDGMENT

This Final Judgment shall expire seven years from the date of its entry.  Notwithstanding the foregoing, the Defendants may request after five years that the Department of Justice examine competitive conditions and determine whether the Final Judgment continues to be necessary to protect competition.  If after examination of competitive conditions the Department of Justice in its sole discretion concludes that the Final Judgment should be terminated, it will recommend to the Court that the Final Judgment be terminated.

## IX.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____9/9/16_____

Court approval subject to procedures set forth in the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge

9